NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
ALYSSA STEVENSON, on behalf of :
herself and others similarly situated :
:
    Plaintiff, : Civil Action No. 12-03334 (JAP)
:
         v. : **OPINION**
:
AMERICAN HONDA FINANCE :
CORPORATION, :
:
    Defendant. :
_____:

PISANO, District Judge.

    This is an action brought by Plaintiff Alyssa Stevenson ("Plaintiff") against Defendant American Honda Finance Corporation ("AHFC" or "Defendant"). Plaintiff alleges that Defendant violated the federal Truth in Lending Act ("TILA"), the New Jersey Consumer Fraud Act ("CFA") and the New Jersey Truth in Consumer Contract, Warranty and Notice Act ("CCWNA") by failing to make certain required disclosures in connection with a loan that Plaintiff obtained to purchase a car. Presently before the Court is Defendant's Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes the Motion. The Court decides these matters without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Motion to Dismiss shall be granted.

**I.**    **Background**

    The following allegations are summarized from the Complaint, and must be taken as true in deciding this Motion to Dismiss. In May 2011, Plaintiff entered into a retail installment sales

contract (the "RISC") with non-party Honda Universe for the financed purchase of a 2009 Honda Civic.[1]  The RISC, which Plaintiff alleges was drafted by AHFC, listed Honda Universe as the seller-creditor of the car and identified AHFC as an assignee of the contract.

The RISC lists a total "finance charge" of $7,053.52 and a total "amount financed" of $15,582.56.  Included in the total amount financed is an entry for $19 paid to Honda Universe for a "credit inq fee."  The RISC does not provide any additional details about this fee.  Plaintiff asserts that this entry refers to a credit inquiry fee, which was an amount paid from the loan proceeds to reimburse Honda Universe for checking Plaintiff's credit report.

The entirety of Plaintiff's claims relate to this $19 charge.  Plaintiff alleges that the credit inquiry fee should have been included in the finance charge, rather than the amount financed.  She asserts that Defendant violated TILA and two New Jersey consumer protection statutes by failing to include the credit inquiry fee in the calculation of the finance charge, thereby understating the cost of borrowing money.  Plaintiff further alleges that this violation was apparent on the face of the RISC, which was assigned to Defendant.

Defendant moves to dismiss Plaintiff's Complaint and contends that it cannot be held liable here since it is merely an "assignee" of Plaintiff's contract and therefore can only be liable if the alleged violation is apparent on the face of the disclosure statement.  Defendant argues that the credit inquiry fee properly be excluded from the finance charge as an "application fee" that is charged to all applicants for credit.  Thus, it asserts that it cannot be held liable since there is no TILA violation apparent on the face of the disclosure statement.  The Court addresses these arguments below.

---

[1] Plaintiff brings this action on behalf of herself and others similarly situated.  To date, however, Plaintiff has not petitioned the Court for class certification and no class has been certified.

## II. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. In deciding a Motion to Dismiss, courts must first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). All reasonable inferences must be made in the Plaintiff's favor. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996); *Oshiver v. Levin, Fishbien, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994).

In 2007, the Supreme Court refashioned the standard for addressing a motion to dismiss under Rule 12(b)(6). *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007). The *Twombly* Court stated that "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id.* at 555 (internal citations omitted); *see also Baraka v. McGreevey,* 481 F.3d 187, 195 (3d Cir. 2007). More recently, the Supreme Court has emphasized that, when assessing the sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. Legal Discussion

### A. Truth in Lending Act Claim

The TILA imposes strict disclosure requirements on lenders in connection with the provision of consumer credit. In particular, lenders must disclose their finance charges to consumers, along with an explanation of how the charges were calculated. *See* 15 U.S.C. §

1638(a); 12 C.F.R. § 226.6(a).  Pursuant to the regulations adopted under TILA (referred to as "Regulation Z"), a "finance charge" is defined as "the cost of consumer credit as a dollar amount" and it includes "any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. § 226.4(a).  Regulation Z is binding on the courts.  *See Household Credit Servs. v. Pfennig*, 541 U.S. 232, 242 (2004); *see also Roberts v. Fleet Bank*, 342 F.3d 260, 265 (3d Cir. 2003) (courts should afford broad deference to the Federal Reserve Board's regulations and official staff interpretations).  A fee charged for investigating a potential borrower's credit-worthiness is plainly "incident to" the extension of credit.  *See, e.g., Allen v. Aronson Furniture*, 971 F. Supp. 1259, 1262 (N.D. Ill. 1997).  Thus, upon first glance, it appears that the credit inquiry fee charged to Plaintiff should have been included in the finance charge.

Certain charges that would otherwise meet the definition of a "finance charge" are specifically excluded, however.  Regulation Z indicates that a charge is not considered a finance charge if it is an "application fee[] charged to all applicants for credit, whether or not credit is actually extended."  12 C.F.R. § 226.4(c)(1).  The Federal Reserve Board clarifies that such an application fee "may cover the costs of services such as credit reports, credit investigations, and appraisal" but, if it is to be excluded from the finance charge, "it must be charged to all applicants, not just to applicants who are approved or who actually receive credit."  Federal Reserve Regulatory Service Official Staff Commentary on Regulation Z, 6-1164.67 ¶ 4(c)(1).[2]

---

[2] Plaintiff argues that the Court should ignore the language of the Board's regulations and Official Staff Commentary, which exclude application fees charged to all applicants from the definition of "finance charge."  In particular, Plaintiff asserts that rules of statutory construction require the Court to apply the more "specific" definition of finance charge encompassed in 12 C.F.R. § 226.4(a), as opposed to the "general" definition included in 12 C.F.R. § 226.4(c)(1). The Court is not persuaded.  While "[i]t is true that specific statutory language should control more general language when there is a conflict between the two," where there is no conflict, "[t]he specific controls . . . within its self-described scope."  *Nat'l Cable & Telecomms. Ass'n,*

Accordingly, if Honda Universe charges the $19 "credit inq fee" to all applicants for credit as part of the application process, then it would qualify as an application fee that is properly excluded from the finance charge. The analysis in this case does not end there, however, as Plaintiff has not brought her claims against Honda Universe, the seller-lender and a "creditor" for purposes of TILA liability.[3] Instead, she has only sued AHFC, the "assignee" of the contract.

Under TILA, an assignee may only be found liable in limited circumstances. *See* 15 U.S.C. § 1641(a). In particular, § 1641(a) provides that:

> [A]ny civil action for a violation of this subchapter . . . which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought *is apparent on the face of the disclosure statement* . . . . For the purpose of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to . . . a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned.

15 U.S.C. § 1641(a) (emphasis added).[4] "In short, an assignee "may be liable only if the violation is apparent on the face of the disclosure statement.'" *Jordan v. Chrysler Credit Corp.*, 73 F. Supp. 2d 469, 473 (D.N.J. 1999); *see also Ramadan v. The Chase Manhattan Corp.*, 229 F.3d 194, 198 (3d Cir. 2000) (holding that "'apparent on the face' means exactly that – for an assignee to be liable under TILA, the violation must be apparent on the face of the assigned

---

*Inc. v. Gulf Power Co.*, 534 U.S. 327, 335-36 (2002). Here, there is no conflict between the two sections and thus no need to favor one section over the other. When read together, the two sections evince a clear intent to exclude certain types of application fees, *i.e.*, those charged to all applicants, from the definition of "finance charge." It is well-settled that Regulation Z and official Board commentary is dispositive "unless demonstrably irrational." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980). There is plainly nothing irrational about excluding such fees from the definition of finance charge.

[3] Plaintiff concedes that "Honda Universe[] is a creditor as defined by the Truth-in-Lending Act." Compl. ¶ 43.

[4] The statute describes another way in which an "apparent violation" can be detected, namely, by "a disclosure which does not use the terms required to be used by this subchapter." Plaintiff does not argue that the violations alleged here are based on the lack of required terms. Therefore, the Court only considers possibility that the disclosure statement was incomplete or inaccurate.

disclosure documents"). Here, Defendant was not the car dealer, but was merely an assignee of the contract. Therefore, at issue is whether the alleged TILA violation – that the RISC did not accurately state the amount of the finance charge – is "apparent on the face of the disclosure statement" that was provided to AHFC. If it is not apparent on the face of the RISC, the analysis must end and the Court must find that the Plaintiff has failed to state a claim against AHFC.

Plaintiff argues that the $19 charge for a credit inquiry fee was paid as part of the amount financed and thus, it is apparent from the face of the RISC that Honda Universe only charges that fee to customers that are approved for and enter into contracts to buy cars on credit. The Court does not find this argument persuasive. As Defendant correctly points out, the relevant factor in determining whether the fee is an application fee is how the fee was *charged*, not how it was *paid*. *See Allen*, 971 F. Supp. at 1262 ("[I]n order to qualify for the protection of §226.4(c)(1), [defendant] need only prove that its application fee was "*charged* to all applicants for credit," not that the fee was actually *collected* from all of them. The two concepts are distinguishable . . .") (emphasis in original). Here, the RISC says nothing about how and to whom the credit inquiry fee was charged. The mere fact that Plaintiff chose to pay the fee by incorporating it into the total amount of the loan has no bearing on whether or not it qualifies as an application fee that may be excluded from the finance charge. *Id.* at 1262 (finding that customer's method of paying fee was irrelevant where defendant charged a $12 fee to all applicants and therefore properly excluded such fee from calculation of the finance charge).

Further, even if Honda Universe only charged the fee to those applicants that were approved for credit and entered into a RISC – which would mean the fee should have been included in the finance charge – that is not apparent from the face of the disclosure statement. The RISC provides no relevant information regarding the purpose of the fee or whether it was

charged to all applicants for credit.  And while Plaintiff alleges that Honda Universe charged the fee to all customers that were approved and entered into contracts (that were assigned to AHFC), she  makes no allegations regarding Honda Universe's practice with respect to other applicants.  To determine whether or not Honda Universe charges this fee to all applicants, Defendant would have to resort to other documents or evidence regarding Honda Universe's practices.  "In effect, the rule for which the plaintiff[] [is] arguing would impose a duty of inquiry on financial institutions that serve as assignees.  Yet this is the very kind of duty that the statute precludes, by limiting the required inquiry to defects that can be ascertained from the face of the documents themselves"  *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 694 (7th Cir. 1998).

      Thus, while the possibility exists that Honda Universe's practices constituted a violation of TILA, no violation is apparent from the face of the disclosure statement and Defendant cannot be held liable.  *See Ritter v. Durand Chevrolet, Inc. et al.*, 932 F. Supp. 32, 35 (assignee could not be liable for car dealer's alleged misrepresentations even where plaintiff alleged that assignee had knowledge of the dealer's practices because the violation was not apparent on the face of the disclosure statement); *Cemail v. Viking Dodge, Inc. et al.*, 982 F. Supp. 1296, 1300 (N.D. Ill. 1997) (dismissing TILA claim against assignees because they "could not have discerned from the documents" that the dealer misrepresented the finance charge by charging a higher price for credit purchases than cash purchases).  *See also Ramadan*, 229 F.3d at 199 ("Congress intended actual knowledge independent of what could be discerned from the disclosure statement to be insufficient to trigger assignee liability under [TILA].").  Here, it is not apparent from the face of the RISC whether or not there was a TILA violation.  Accordingly, Plaintiff's claims fail as a matter of law and the Complaint must be dismissed.

### B. New Jersey CFA and CCWNA claims

Plaintiff's CFA and CCWNA claims in this case are predicated on violations of TILA. Indeed, Plaintiff alleges that the "violations of the TILA [alleged in the complaint] constitute violations of the CFA" and that Defendant violated the CCWNA by violating the disclosure requirements of TILA. Where a plaintiff's claims are based on alleged non-disclosures that would qualify as TILA claims, compliance with TILA establishes compliance with the CFA and CCWNA. *See Pensky v. American Honda Fin. Corp.*, 378 N.J. Super. 221, 231 (App. Div. 2005) ("[W]e hold that American Honda's compliance with the TILA is a complete defense to the state claims being asserted against American Honda that are factually based upon TILA disclosure requirements. . ."); *Alexiou v. Brad Benson Mitsubishi, et al.*, 127 F. Supp. 2d 557, 565 (D.N.J. 2000) (finding that state law claims relating to assignee liability are pre-empted by TILA since it "would be contrary to the goals of the TILA to hold an assignee liable under a state statute even though the assignee has been assigned a contract that appears perfectly compliant with the law on its face."). *See also Allen*, 971 F. Supp. at 1261-62 (holding that compliance with TILA establishes compliance with state Retail Installment Sales Act and Consumer Fraud Act); *Phillips v. Lithia Motors, Inc.*, 2006 U.S. Dist. LEXIS 25607, at *50 (D. Or. 2006) (dismissing derivative liability claims against lender because compliance with TILA is a defense to state consumer law and fraud claims). Accordingly, since Defendant's motion to dismiss is granted with respect to Plaintiff's TILA claim, the motion must be granted with respect to the CFA and CCWNA claims as well.

### IV. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss will be granted. An appropriate Order follows.

          /s/ Joel A. Pisano
          JOEL A. PISANO, U.S.D.J.

Dated: December 20, 2012